UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| | ) | |
| vs. | ) | 1:04-CR-166 |
| | ) | COLLIER/CARTER |
| | ) | |
| JOSEPH C. VARNELL, also known as | ) | |
| "Courtney" | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Joseph C. Varnell's motion to suppress (Court File No.13) is pending before the undersigned having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B). Defendant asserts police had no legitimate basis to arrest him thereby requiring suppression of the fruits of a search police conducted subsequent to his arrest. For the reasons stated herein, it is RECOMMENDED the defendant's motion to suppress be DENIED.

II. Relevant Facts

A hearing was held on defendant's motion to suppress on Wednesday, July 7, 2005, in which Officer Nathan Thomas was the only witness. Officer Thomas has been employed in law enforcement for the past ten years. He has been employed with the Cleveland Police Department for the past two years. His primary beat is and has been the Cleveland Housing Authority property. On May 24, 2004, Officer Thomas and Officer Terry Wyatt, also with the Cleveland Police Department, were patrolling Cleveland Housing Authority property on Lay Street, in Cleveland, in the Eastern District of Tennessee. They were assigned to a surveillance detail to investigate reported illegal drug activity and were particularly interested in watching two

apartments in one of the public housing buildings.  While stationed in an unmarked vehicle parked on a public road at 1205 Lay Street, they observed a white male sitting in a vehicle parked in the public housing parking lot.  They saw another white male, whom they could not identify, exit one of the public housing apartments and enter the parked vehicle to talk with the driver.  After a few minutes, the second man exited the car and returned to the apartment.  Shortly thereafter, the second man again left the apartment and returned to the same car.  After a few minutes, he went back inside the apartment.  This activity made Officer Thomas suspicious that a drug transaction had taken place.  After the second man went back inside the apartment for the second time, the vehicle which the officers had been watching left the parking lot.  It traveled about 1 ½ or two miles to another public housing building where it pulled into the parking lot.  Officer Thomas testified that during the time they followed this vehicle, it failed to make a turn signal as required by law on two separate occasions.  On this basis, Officer Thomas decided to make a traffic stop in order that he might speak with the driver.

     After the driver parked the vehicle and was starting to exit it, Officer Thomas approached the driver and began to talk with him.  Thomas questioned the driver, identified as Richard Ledbetter, about the white male who had come to his car earlier.  The driver stated that the white male, a friend whom he identified as Courtney Varnell, had wanted a ride to 1205 Lay Street.  Officer Thomas was very familiar with Varnell and knew that he was barred from all Cleveland Housing Authority properties for previous alleged drug activities.  Officer Thomas told the driver he thought a drug transaction had taken place.  The driver denied this statement and said Varnell had asked him for a ride.  Thomas asked the driver if Varnell had drugs on him, and the driver stated he knew Varnell had drugs on him and that Varnell had come to the car to get his shirt and a glass crack pipe.

The officers returned to 1205 Lay Street to contact Varnell. As they approached, they observed the same white male they had seen earlier and whom the driver had identified as Varnell exit an apartment in the public housing building, enter a two-door red vehicle, and sit in the rear passenger seat of the car. The driver then drove the red car off the parking lot onto the public road at which point the officers blocked the vehicle with theirs and effected a stop in order to place Varnell under arrest for the misdemeanor of criminal trespass. As the officers approached the car, Varnell saw them and began moving around as if attempting to conceal something. Officer Thomas made contact with the driver while Officer Wyatt arrested Varnell for criminal trespass on Cleveland Housing Authority property. Upon searching Varnell, Officer Wyatt found a syringe and needle, a glass smoking pipe, two rolling papers, electronic scales, $62.35 in currency, and two sheets of paper that listed names and monetary transactions. A further search of Varnell by Officer Thomas revealed that Varnell was wearing a black back brace. As Officer Thomas began to remove a back brace that Varnell was wearing, Varnell stated, "[d]on't let my .25 fall out." Officer Thomas then removed a .25 caliber Sundance pistol that was concealed in Mr. Varnell's back brace. While searching the rear passenger area of the vehicle where Varnell had been sitting, Officer Wyatt discovered a small plastic container containing approx. 1.1 grams of marijuana and approximately 0.7 grams of methamphetamine in a clear plastic baggie in the floorboard where Varnell's feet had been.

### III. Argument

*A. Searches Incident to Arrest*

Defendant argues police had no justifiable reason for stopping the vehicle in which he was riding, arresting him, and searching him and the vehicle subsequent to his arrest.

Warrantless arrests – and searches incident to such arrests -- are permissible when an officer has probable cause to believe that a felony is being or has been committed, *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983), or when a suspect has committed a misdemeanor in the officer's presence. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "Probable cause necessary to justify an arrest is defined as 'whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.'" *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir. 2005) (brackets original) (citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). *See also*, *United States v. Moncivais,* 401 F.3d 751, 756 (6th Cir. 2005) ("Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.") (internal citations omitted).

Three times Officer Thomas observed the defendant exiting the public housing building from which he has been banned. The first two times Thomas saw the defendant exit the building, he did not know the identification of the defendant. But then Richard Ledbetter identified for Officer Thomas the man who had been in Ledbetter's car, and the third time Thomas saw the defendant exit the public housing building, Thomas knew the defendant was Varnell and that Varnell had been banned from public housing property. Under Tennessee law, a person commits criminal trespass who, knowing he does not have the owner's effective consent to do so, enters or remains on the property. Tenn. Code Ann. § 39-14-405(a). Criminal trespass is a class C misdemeanor in Tennessee. Tenn. Code Ann. § 39-14-104(d). At the July 6, 2004, suppression hearing, the government introduced into evidence a copy of a "Criminal Trespass Notice" dated December 5, 2002, stating Joseph Courtney Varnell is barred from Cleveland

4

Housing Authority Property. The notice is signed by the defendant. *See* Gov. Ex. 1. According to Officer Thomas, the ban remains in effect unless and until it is repealed by the Public Housing Authority Director which, in this case, it was not.

At the July 6, 2005, hearing, the defendant argued that because Officer Thomas arrested him *after* the defendant exited the Cleveland Housing Authority property and when the defendant was on a public road, then Thomas did not arrest the defendant for a misdemeanor crime committed in the officer's presence. The defendant cites no authority for this argument, and I find it meritless. Richard Ledbetter identified to Officer Thomas the man who had been sitting in Ledbetter's car as Courtney Varnell. Thomas saw this same man exit the Cleveland Housing Authority property three times. Thomas knew Varnell had been banned from the property. Under all these circumstance, I conclude Thomas had probable cause to arrest the defendant for criminal trespass.

Following the defendant's arrest, the officers conducted a search of Varnell and the vehicle in which he had been riding. One of the well-established exceptions to the warrant requirement of the Fourth Amendment is the category of searches incident to arrest. *Michigan v. DeFillippo*, 443 U.S. 31, 35 (1979); *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Chimel v. California*, 395 U.S. 752, 762-63 (1969).

Where officers have probable cause to arrest, they may then search the suspect for weapons and evidence. *Id., see also United States v. Hughes*, 898 F.2d 63 (6th Cir. 1990). Officers may also search bags and containers which were at one point in close proximity to the suspect, even if he has been separated from the container to be searched. *New York v. Belton*, 453 U.S. 454, 456 (1981); *United States v. Hudgins*, 52 F.3d 115, 116 (6th Cir. 1995), *cert. denied*, 516 U.S. 891 (1995); *United States v. Thomas*, 11 F.3d 620, 628 (6th Cir. 1993), *cert.*

5

*denied*, 511 U.S. 1044 (1994); *United States v. Patterson*, 993 F.2d 121, 123 (6th Cir. 1993). Thus, the officers' search of the defendant and the area in the vehicle where he had been sitting was permissible by Fourth Amendment standards.

   *B. Defendant's Statements Made Upon Arrest*

   Miranda warnings must be given when a suspect is in custody and is subject to interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966). Any statements made by a suspect which are volunteered, even if he is in custody, do not require Miranda warnings. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980); *United States v. Murphy*, 107 F.3d 1199, 1204-05 (6th Cir. 1997) (holding admissible the statements voluntarily made by suspect while in police cruiser, without questioning by the officer). Additionally, one exception to the Miranda requirement is the "public safety exception," which allows officers to question a suspect at the scene of an arrest about weapons, drug use, or other matters pertaining to the safety of the officers or members of the general public. *New York v. Quarles*, 467 U.S. 649 (1984).

   While Officer Thomas was conducting a search of Mr. Varnell, the defendant volunteered the fact that he was in possession of a firearm inside his back brace, where the officer eventually discovered the gun. Even if the officer had asked the defendant about whether he was in possession of any weapons, the defendant's response would still be admissible under the public safety exception to the Miranda requirement. Officers had reason for concern given their observations of activity consistent with narcotics sales and the defendant's furtive actions inside the car upon their arrival.

6

## IV. Conclusion

For the reasons stated above, it is RECOMMENDED defendant's motion to suppress be DENIED.

_____
WILLIAM B. MITCHELL CARTER
UNITED STATES MAGISTRATE JUDGE